

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00279-CR

FREDDY PEREZ                                                    APPELLANT

V.

THE STATE OF TEXAS                                                  STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY
TRIAL COURT NO. 1328962D

----------

## MEMORANDUM OPINION[1]

----------

Before the court, Appellant Freddy Perez entered an open plea of guilty to possession with intent to deliver a controlled substance, methamphetamine, of four grams or more but less than 200 grams, a first degree felony, and was sentenced to fifteen years' confinement in the Correctional Institutions Division of the Texas Department of Criminal Justice. Before entering his plea, Appellant

---

[1]*See* Tex. R. App. P. 47.4.

filed a motion to suppress the evidence obtained from his residence by a search warrant. Appellant appeals the denial of that motion. We affirm.

## Argument and Background

In his motion, Appellant contended that the supporting affidavit contained conclusory assertions; that it failed to establish the credibility, reliability, and the bases of the informants' knowledge; and that it was not corroborated by the affiant.[2] After a hearing, the trial court denied Appellant's motion without an explanation.[3] Appellant filed a request for findings of fact and conclusions of law. The State filed proposed findings of fact and conclusions of law, but the trial court did not adopt them. In one point, Appellant argues that the trial court erred by denying his motion to suppress because the search warrant affidavit failed to establish probable cause.

---

[2]We do not construe Appellant's motion to suppress to encompass a *Franks* argument, that is, an attack on the veracity of the affidavit. *See Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674 (1978); *Cates v. State*, 120 S.W.3d 352, 356 (Tex. Crim. App. 2003) (setting out the three-part test for obtaining a *Franks* evidentiary hearing). Similarly, we do not construe his brief to encompass a *Franks* argument. Appellant does not cite *Franks* or any other cases addressing a *Franks* argument.

[3]Although there was an evidentiary hearing and the State's brief details testimony offered at the hearing by the affiant, Officer Matthew McMeans, statements made during a hearing on a motion to suppress do not factor into the probable cause determination. *Blake v. State*, 125 S.W.3d 717, 723 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

**Standard of Review**

Probable cause to support the issuance of a search warrant exists when the facts submitted to the magistrate are sufficient to justify a conclusion that the object of the search is probably on the premises to be searched at the time the warrant is issued. *Cassias v. State*, 719 S.W.2d 585, 587 (Tex. Crim. App. 1986); *State v. Bradley*, 966 S.W.2d 871, 873 (Tex. App.—Austin 1998, no pet.). The sufficiency of the affidavit is determined by considering the totality of the circumstances set forth within the four corners of the document. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983); *Hennessy v. State*, 660 S.W.2d 87, 90 (Tex. Crim. App. [Panel Op.] 1983); *Bradley*, 966 S.W.2d at 873. The affidavit must be interpreted in a common sense and realistic manner, recognizing that reasonable inferences may be drawn from the affidavit. *Hedspeth v. State*, 249 S.W.3d 732, 737 (Tex. App.—Austin 2008, pet. ref'd). The issuing magistrate's determination of probable cause must be given great deference and will be sustained if the magistrate had a substantial basis for concluding that probable cause was shown. *Gates*, 462 U.S. at 236, 103 S. Ct. at 2331; *Swearingen v. State*, 143 S.W.3d 808, 811 (Tex. Crim. App. 2004).

The essence of the Fourth Amendment's warrant clause and its Texas equivalent is that a magistrate may not issue a search warrant without first finding "probable cause" that a particular item will be found in a particular location. *State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012). The question is whether a reasonable reading by the magistrate would lead to the

3

conclusion that the four corners of the affidavit provide a "substantial basis" for issuing the warrant. *Id.* Probable cause exists when there is, under the totality of the circumstances, a "fair probability" that evidence of a crime will be found at the specified location. *Id.* The standard is flexible and not a demanding one. *Id.* Neither federal nor state law defines precisely what degree of probability suffices to establish probable cause, but a magistrate should not be a rubber stamp and cannot merely ratify the bare conclusions of others. *Id.* To ensure that a magistrate does its duty, courts must continue to conscientiously review the sufficiency of affidavits on which the magistrates have issued warrants. *Id.*

After reviewing the supporting affidavit realistically and with common sense, a reviewing court must uphold the magistrate's decision so long as the magistrate had a substantial basis for concluding that probable cause existed. *Id.* Even in close cases, reviewing courts give great deference to a magistrate's determination of probable cause. *Id.* The focus is not on what other facts could or should have been included in the affidavit but on the combined logical force of the facts that are in the affidavit. *Id.* at 354–55.

A citizen-informer is more deserving of a presumption of reliability than an informant from the criminal milieu. *Id.* at 356. When an unquestionably honest citizen comes forward with a report of criminal activity, courts have found rigorous scrutiny of the basis of the citizen's knowledge unnecessary. *Id.* (relying on *Gates*, 462 U.S. at 233–34, 103 S. Ct. at 2330). On the other hand, when courts may question an informant's motives, provided the informant gives an

4

explicit and detailed description of alleged wrongdoing along with a statement that the informant observed the event first-hand, courts have concluded that the tip is entitled to greater weight than might otherwise be the case. *Id.* (relying on *Gates*, 462 U.S. at 234, 103 S. Ct. at 2330). Confidential informants are not considered inherently reliable. *Id.* at 357. However, even if culled from the criminal milieu, confidential informants may be considered reliable tipsters if they have a successful "track record." *Id.*

The informants' reliability or the bases of their knowledge is relevant when determining the value of their assertions. *See Gates*, 462 U.S. at 230, 103 S. Ct. at 2328; *Davis v. State*, 144 S.W.3d 192, 197 (Tex. App.—Fort Worth 2004, pet. ref'd) (op. on reh'g). However, the veracity, reliability, and basis of knowledge of an informant are not the exclusive means of determining probable cause. *See Gates*, 462 U.S. at 230, 103 S. Ct. at 2328. Corroboration of the details of an informant's tips through independent police investigation or other means can also be relevant in the magistrate's determination of probable cause. *See id.* at 241, 103 S. Ct. at 2334; *Davis*, 144 S.W.3d at 197. Tips from informants of unknown reliability must be coupled with facts from which an inference of reliability can be drawn. *Duarte*, 389 S.W.3d at 358. When an informant's reliability is questionable, courts find probable cause for the issuance of a search warrant if the tip is corroborated, if the statement is against penal interest, if the information is consistent with information provided by other informants, if the informant provides a detailed first-hand observation, if the information is coupled with an

5

accurate prediction of the subject's future behavior, or if there is a substantial basis for crediting the hearsay. *Id.* at 356–57.

## Discussion

Appellant complains that the affiant initially identifies an offense that occurred on or about May 30, 2012, but thereafter recites facts that occurred in early May 2013 and on May 30, 2013. Contextually, the reference to 2012 was a typographical error, and inferentially the magistrate could have concluded the affiant was actually referring to 2013. *See Hedspeth*, 249 S.W.3d at 737 (stating that affidavits are to be interpreted in a common sense and realistic manner).

In the first paragraph of the affidavit, the affiant stated:

> 1.      That your affiant, MT McMeans #3489, has been a Fort Worth Police Officer for over 9 years and is currently assigned to the Special Operations Division Narcotics Unit. Your affiant has made numerous narcotics arrests over the course of his time as an officer, which includes various Controlled substances. Your affiant has the knowledge and the ability to recognize narcotics, which include methamphetamines.[4]

This paragraph established that the affiant was an experienced police officer. More specifically, it established that the affiant was an experienced police officer in the area of narcotics.

---

[4]We have not sought to correct the spelling, punctuation, or grammar of the affidavit in any way.

6

The second paragraph introduced Pee Wee:

> 2.      That your affiant was informed approximately two months ago that a h/m male named "Pee Wee"[5] was selling large quantities of methamphetamines along with black tar heroin and marijuana in the area of south central Fort Worth.  That in the course of my investigation into Pee Wee, I had an arrested person advise that he or she had seen multiple kilograms of methamphetamines, heroin and marijuana inside this residence.

This paragraph showed that the affiant got his information from two independent sources regarding a drug dealer named Pee Wee.  Although neither source appeared particularly reliable, when taken together, one tended to corroborate the other.  *See Duarte*, 389 S.W.3d at 356 (stating that information consistent with that provided by other informants provides reliability).  Although the second paragraph did not expressly tie the second informant's information to Pee Wee's residence, contextually that was what the affiant intended to convey.  *See id.* at 354 (stating that courts review affidavit with common sense); *Elardo v. State*, 163 S.W.3d 760, 765 (Tex. App.—Texarkana 2005, pet. ref'd) (stating that magistrate may draw inferences from the facts contained within an affidavit).

In the third paragraph, the affiant tied drug activity to 910 W. Bolt Street:

> 3.      That in early May, 2013, your affiant observed and listened to a conversation between a confidential informant and a known narcotic trafficker.  That the narcotic trafficker advised the informant that he had an ounce of methamphetamines on his person and that he was about to take it back to the house where he had picked it up.

---

[5]Elsewhere in the affidavit, the affiant stated the suspect in charge of the location he wanted to search was known as "Freddie", also known as Pee Wee, whom he further described as a Hispanic male between the ages of forty-five and fifty.

> That your affiant along with other narcotic officers then followed the narcotic trafficker to 910 W Bolt St where we observed him exit his vehicle and enter into 910 W Bolt St.

The third paragraph involved a confidential informant, but it was not the confidential informant who provided the critical information; rather, it was the "known narcotic trafficker" who was talking to the confidential informant and whose conversation was being listened to by the affiant. This person, regardless of whether he was correctly identified as a "known narcotic trafficker," admitted having methamphetamines and indicated he was taking the methamphetamines back where he picked them up. This other person's admission of possession of a controlled substance was a statement against his penal interest, and, therefore, lent it some reliability. *See Duarte*, 389 S.W.3d at 356 (stating that a statement against penal interest lends some reliability). The affiant then followed this other person to 910 W. Bolt Street, the location identified in the search warrant, where this other person exited his vehicle and entered the residence. Where this person possessing the methamphetamines drove was something the affiant personally observed and could, therefore, corroborate. *See id.* (stating that corroboration supports reliability). Because this other person said he was going to return the methamphetamines to the location from which he got them and because this person then went directly to 910 W. Bolt Street, the logical, common-sense inference, although not foolproof, was that 910 W. Bolt Street was the source of the methamphetamines. *See id.* at 354 (stating that courts review affidavit with common sense).

8

The fourth paragraph introduced the activity that led the affiant to believe that a drug offense occurred at 910 W. Bolt Street on May 30, 2013:

> 4. That on 05-30-2013, your affiant received information from a confidential informant that a h/m named Ricky Salazar aka Mono (whom I know to have a date of birth 09-06-1968) would be located at 910 W Bolt St where he would be meeting with Pee Wee. The confidential informant advised your affiant that Salazar would be buying $500.00 worth of methamphetamines from Pee Wee. This officer knows that amount to be roughly one half ounce worth of methamphetamines. This officer knows Salazar also drives a grey 4d car with Texas license plate DYT042. Narcotic officers immediately located the grey 4d in the drive way. That on 05-30-2013, these officers observed the grey 4d leave 910 W Bolt St. That these officers observed the vehicle failed to use a turn signal prior to 100 feet at East Seminary and I-35. Your affiant then had the North Zero Tolerance officers stop the vehicle for said offense.

This fourth paragraph began with three pieces of information provided by a confidential informant: (1) Ricky Salazar was at 910 W. Bolt Street; (2) Salazar would be meeting Pee Wee at 910 W. Bolt Street, thus tying Pee Wee to that address; and (3) Salazar would be buying $500 worth of methamphetamines from Pee Wee, thereby inferentially tying Pee Wee to the sale of drugs out of 910 W. Bolt Street. Because there was no information regarding the reliability of the confidential informant, this information would be considered unreliable absent other factors. *See id.* at 357 (stating that confidential informants not considered inherently reliable). There were, however, other factors. The affiant knew what kind of car Salazar drove and knew its license plate number. Other officers observed that vehicle in the driveway of 910 W. Bolt Street. Consequently, the confidential informant's tip was corroborated to the extent that the police were

9

able to confirm that the car Salazar drove was at the location the confidential informant said Salazar would be. *See id.* at 356 (stating that corroboration supports reliability). These officers saw the vehicle leave the location and later stopped it for a traffic offense. Appellant complains that failing to use a left turn signal is not an offense unless the driver was changing lanes or making a left turn, neither of which was alleged in the affidavit. Once again, however, the magistrate would be allowed to make the reasonable inference that Salazar failed to signal a left turn when changing lanes or making a left turn. *See Hedspeth*, 249 S.W.3d at 737 (stating that affidavits are to be interpreted in a common sense and realistic manner).

The fifth paragraph discussed the traffic stop and provided additional corroboration that the confidential informant's tip was reliable:

> 5. That on 05-30-2013, North Zero Tolerance officer, Corporal Farmer, located Ricky Salazar in the driver seat along with his wife Diane Salazar. That these officers know the vehicle belongs to Diane Salazar through vehicle registration along with her own admittance on the traffic stop. Cpl Farmer then received verbal consent to search the vehicle from Diane Salazar. Cpl Farmer then located a clear plastic baggy lying in between the driver seat and the console. Inside the bag Cpl Farmer located an off white crystal like substance that he believed through training and experience to be methamphetamines. The field weight was 15.5 grams (half ounce, the amount the confidential informant advised your affiant that Ricky Salazar would be purchasing. The suspected narcotics were field tested by narcotic officer, Officer T. Verrett, using Narco Pouch 923, and it did test presumptive positive for methamphetamines.

In the fifth paragraph, the police found Salazar driving the car that the affiant, in the fourth paragraph, said Salazar was known to drive, thereby corroborating the

10

affiant's assertion. The officers then determined, through vehicle registration and through the admission of Salazar's wife, that the car belonged to her. Salazar's wife then gave the police permission to search her car. This told the magistrate that the person giving permission to search the car actually had the authority to give it. *See Pinkston v. State*, 501 S.W.2d 317, 318 (Tex. Crim. App. 1973). The police then found 15.5 grams of methamphetamines, which the affiant knew to correspond to half an ounce, which the affiant stated corroborated the amount the confidential informant said Salazar would be buying from Pee Wee at the 910 W. Bolt Street location Contextually, the affiant would know this by virtue of his experience as a narcotics officer, which he set out in the first paragraph. *See Elardo*, 163 S.W.3d at 765 (stating that magistrate may draw inferences from the facts contained within an affidavit). For the magistrate's purposes, the confidential informant said Salazar would be buying drugs at Pee Wee's at 910 W. Bolt Street, and the police found Salazar with drugs after leaving that location, which tended to corroborate the reliability of the confidential informant. *See Duarte*, 389 S.W.3d at 356 (stating that corroboration supports reliability).

The affiant discussed Salazar's verbal statement in his sixth paragraph:

> 6. That on 05-30-2013, your affiant spoke with Ricky Salazar. I advised him of my investigation. Ricky Salazar then screamed out loud the Res Gestae statement," man I just bought it from Pee Wee man, I don't want to go back to prison". I asked him where Pee Wee lived and he said somewhere off W Bolt St.

Salazar, coming from the criminal milieu, was not a particularly reliable informant. *See id.* (stating that citizen-informer is more deserving of a presumption of

11

reliability than informant from criminal milieu). Any reliability from his statements would have to come from other factors. There were other factors. Salazar's statement that the drugs were his was a statement against his penal interest, which lent it some reliability. *See id.* (stating that a statement against penal interest adds reliability). Salazar himself became an informant on both the identity and location of his supplier. Salazar's information was consistent with that of other informants regarding both the identity and the location of the drug supplier. This consistency with information from other sources lent his statements some reliability. *See id.* (stating that information consistent with that provided by other informants adds to reliability).

In paragraph thirteen, the affiant explained why he wanted a "no knock" warrant:

> 13. That your affiant was advised by Ricky Salazar that within a week he had personally seen Pee Wee carrying a .380 caliber pistol. That your affiant is requesting a No Knock warrant due to these circumstances.

Appellant complains that nothing in this paragraph identifies where Salazar saw Pee Wee with the gun. Earlier portions of the affidavit, however, identified Salazar as meeting Pee Wee at the 910 W. Bolt Street address; nothing in the affidavit suggested Salazar met Pee Wee at any other location. Regardless, if Pee Wee had a gun, and if Pee Wee was at the 910 W. Bolt Street address, a reasonable inference was that the gun would be there with Pee Wee. *See Elardo*, 163 S.W.3d at 765 (stating that magistrate may draw inferences from the

12

facts contained within an affidavit). The affidavit did not assert that drug dealers frequently had guns. Nevertheless, common sense would suggest drug dealers would likely have some form of defense. *See Hedspeth*, 249 S.W.3d at 737 (stating that affidavits to be interpreted in common sense and realistic manner). Additionally, it would be difficult to imagine why Salazar would lie about that, and it would be difficult to imagine why the police or the magistrate would ignore such a warning on the theory that Salazar had something to gain by lying about Pee Wee having a gun.

After reviewing the supporting affidavit realistically and with common sense and after giving great deference to the magistrate's determination, we hold that the magistrate's decision had a substantial basis for concluding that probable cause existed. *See Duarte*, 389 S.W.3d at 354. We reject Appellant's arguments, which accord no deference to the magistrate's determination. *See id.* (stating that courts give great deference to the magistrate's determination of probable cause). Under the totality of the circumstances, using a flexible and non-demanding standard, we hold that there was a "fair probability" that evidence of a narcotics offense would be found at the specified location. *See id.* We reject Appellant's arguments, which require an exacting hypertechnical review of every flaw or perceived flaw in the affidavit. *See Elardo*, 163 S.W.3d at 765 (stating that courts should not invalidate warrants through "hypertechnical" interpretations of the supporting affidavits). Finally, Appellant's brief focuses on what other facts could have or should have been included. That is not the

standard; rather, the focus is on the combined logical force of the facts that were in the affidavit. *See Duarte*, 389 S.W.3d at 354–55. Probable cause does not require hard certainties but does require probabilities as seen and weighed from those versed in the field of law enforcement. *See Gates*, 462 U.S. at 231–32, 103 S. Ct. at 2328–29. Probable cause does not mean evidence sufficient to convict but merely circumstances sufficient to warrant suspicion. *See id.* at 235, 103 S. Ct. at 2330.

We overrule Appellant's sole point and affirm the trial court's judgment.


/s/ Anne Gardner
ANNE GARDNER
JUSTICE

PANEL: LIVINGSTON, C.J.; GARDNER and SUDDERTH, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: December 10, 2015